[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 465.]

OFFICE OF DISCIPLINARY COUNSEL *v*. SIMS.

[Cite as *Disciplinary Counsel v. Sims,* 2002-Ohio-4798.]

*Attorneys at law—Misconduct—Two-year suspension—Neglecting to look after client's affairs as promised and then failing to disclose the neglect.*

(No. 2002-0678—Submitted June 5, 2002—Decided October 2, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 01-91.

_____

**Per Curiam.**

{¶1} We must decide in this case how to appropriately sanction an attorney who neglected to look after his client's affairs as promised and then failed to disclose his neglect. The Board of Commissioners on Grievances and Discipline recommended that respondent, David Scott Sims of Newark, Ohio, Attorney Registration No. 0039168, be indefinitely suspended from the practice of law in Ohio because he engaged in this conduct and thereby violated DR 6-101(A)(1) and (3) (representing a client incompetently and negligently), 1-102(A)(4) and (6) (engaging in dishonest conduct and conduct that adversely reflects on fitness to practice law), and 7-101(A)(2) and (3) (failing to carry out contract for professional employment and causing client harm during the relationship). We, however, consider a definite suspension of two years appropriate.

{¶2} In April 1999, respondent agreed to represent a 63-year-old client for whom mental health caseworkers were trying to have a guardian appointed. Respondent was able to help this client avoid a guardianship appointment twice, the second time on the condition that the client set up a durable power of attorney for managing her affairs. The client executed the power of attorney, naming respondent and her daughter, a Kentucky resident, as attorneys-in-fact. The power

of attorney gave respondent and the daughter authority to manage all the client's real and personal property, but it did not allow them to make decisions about her health care.

{¶3} In August 2000, the client suffered a head injury that required surgery and convalescence. As the client was recovering, respondent obtained a second power of attorney, this one granting him sole authority over her affairs and also over her health care. The client's condition eventually required long-term care, and her case workers found a suitable assisted-living care facility; however, the selected facility had a policy allowing residents to be discharged for nonpayment of rent and other fees.

{¶4} Thereafter, respondent neglected to pay the fees needed for his client to continue living at the facility. Representatives of the facility called respondent about the arrearages many times, but he did nothing to address the situation. And when the client's son was also contacted by the facility, he visited respondent to inquire about her mother's care and finances. Respondent assured him that he was taking care of his client's needs.

{¶5} In January 2001, respondent's client wrote to him herself to remind him of his promise to look after her interests. Her letter revealed that she had no cable service, no phone, and no money to buy even basic necessities. The director of the facility understood the gravity of the situation and when she could not get respondent's help, she asked another attorney to look into her resident's affairs. The other attorney learned that respondent had somehow disposed of his client's house trailer.

{¶6} In March 2001, respondent's client was evicted from the residential facility and had to be removed in restraints. She was moved to a nursing home and has been unable to qualify for Medicare or Medicaid because of the way respondent disposed of her trailer. Respondent later admitted that he had allowed the trailer to

be hauled away without title or payment. He also admitted to having failed to pay his client's bills even though he had access to money in her bank account.

{¶7} On October 8, 2001, relator, Disciplinary Counsel, charged that respondent had violated the cited Disciplinary Rules. Respondent was served with the complaint but did not answer, and relator filed a motion for default. A master commissioner appointed by the board reviewed the charges, found the facts and misconduct as stated, and recommended that respondent be indefinitely suspended from the practice of law. The board adopted the master commissioner's findings of fact, conclusions of law, and recommendation.

{¶8} We agree that respondent violated DR 6-101(A)(1) and (3), 1-102(A)(4) and (6), and 7-101(A)(2) and (3); however, we consider an indefinite suspension too severe. As the board observed, respondent was admitted to the bar in 1987 and has never committed a disciplinary infraction before. Moreover, in an interview with relator's staff during its investigation, respondent expressed his remorse for having treated his client so poorly and confessed that he had simply gotten "in over [his] head" and just "froze."

{¶9} We appreciate that the practice of law can be overwhelming, but attorneys are obligated to get the help of cocounsel or other assistance before any client is harmed. There are no exceptions. On the other hand, because of respondent's history, remorse, and explanation, we are inclined to temper the board's recommendation and impose a definite two-year suspension period. Accordingly, respondent is hereby suspended from the practice of law in Ohio for a period of two years. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

**{¶10}** Because I would adopt the recommendation of the master commissioner and the board to indefinitely suspend Sims from the practice of law, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

————————————

Jonathan Coughlan, Disciplinary Counsel, and Gloria J. Sigman, Assistant Disciplinary Counsel, for relator.

————————————